UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALTHEIA WOODS, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY, an Illinois corporation,<br><br>Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Altheia Woods ("Plaintiff Woods" or "Woods") brings this Class Action Complaint and Demand for Jury Trial against Defendant Allstate Insurance Company ("Defendant" or "Allstate") to stop Allstate from directing its agents to violate the Telephone Consumer Protection Act by making pre-recorded and other telemarketing calls to consumers *without their consent*, including pre-recorded telemarketing calls to consumers who expressly requested for the calls to stop. Plaintiff Woods, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Altheia Woods is a resident of Marshall, Missouri.

2. Defendant Allstate is an Illinois registered corporation headquartered in Northbrook, Illinois.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District, and the wrongful conduct giving rise to this case was directed from this District.

**INTRODUCTION**

5. As the Supreme Court explained at the end of its last term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using … an artificial or pre-recorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

7. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, pre-recorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

8. While "prior express consent" is required for all pre-recorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver pre-recorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

9. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

10. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

11. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

12. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

13. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

14. According to online robocall tracking service "YouMail," 4.6 billion robocalls were placed in February 2021 alone, at a rate of 165.1 million per day. www.robocallindex.com (last visited March 21, 2021).

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection,

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*

Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

17. Allstate provides insurance to consumers.[3]

18. In order to generate sales and generate consumer leads for its salespeople, Allstate contracts with third-party lead generators.

19. These third-party lead generators place unsolicited calls to consumers, including calls that use a pre-recorded voice message system.

20. Upon information and belief, Allstate pays for the leads that are generated as a result of the third-party telemarketing calls that are placed on its behalf.

21. In fact, Allstate maintains the Allstate Lead Marketplace, which is a platform through which Allstate and its agents can purchase Allstate vetted leads to telemarket to.

22. The Federal Communication Commission has instructed that corporations such as Allstate may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activties to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).*

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.allstate.com/about.aspx?intcid=ILC-OurStory-141201:AllstateOverview

4

23. As per Plaintiff's experience, the pre-recorded calls that are being placed on behalf of Allstate begin with a pre-recorded interactive agent identifying him/herself as a senior executive at an automotive department.

24. A company name is not initially mentioned in the pre-recorded calls.

25. Numerous consumers have posted complaints about similar calls they received from the same pre-recorded agents that Plaintiff received calls from including:

- "He said: 'Hello this is Justin I am a senior executive with our Automotive Department.' Can you hear [me clearly]?' Then I hang up. Uses different numbers."[4]
- Robocaller. "Hi this is Justin I'm a senior executive in our automotive department on a recorded line…"[5]
- "senior executive automotive department"[6]

26. Consumers have recorded and posted the same pre-recorded calls that Plaintiff received including:



[7]

---

[4] https://www.shouldianswer.com/phone-number/5092998863
[5] https://800notes.com/Phone.aspx/1-843-548-3764
[6] https://us.shouldianswer.net/phone-number/8043765217
[7] https://directory.youmail.com/directory/phone/3366976405



[8]

## PLAINTIFF WOODS'S ALLEGATIONS

27. Plaintiff Woods's cell phone is not associated with a business and is used for personal use only.

28. Plaintiff received a few pre-recorded calls regarding automotive insurance at the beginning of January, 2021.

29. During these calls, Plaintiff noted that she was interacting with pre-recorded agents who were programmed to respond to certain things Plaintiff said.

30. Plaintiff asked for the calls to stop, but the agent would simply hang-up.

31. On January 13, 2021, Plaintiff Woods received a pre-recorded call to her cell phone on behalf of Defendant using phone number 800-699-2241.

32. Plaintiff provided answers to a pre-recorded agent that responded to her prompts, enabling Plaintiff to be transferred to a live agent so that she could identify who was behind these pre-recorded calls.

33. Plaintiff was transferred to an agent who said she works for Allstate.

---

[8] https://directory.youmail.com/directory/phone/6603248469

6

34. Plaintiff told the agent that her phone number is on the do not call registry, making it clear that she did not want to receive calls from or on behalf of Allstate.

35. Plaintiff then told the agent that she was recording the call.

36. The agent said that she would hang up, since Plaintiff was recording the call and then proceeded to hang-up.

37. Despite the fact that Plaintiff told the Allstate agent that her phone number is on the do not call list, Plaintiff received a call to her cell phone directly from Allstate on January 15, 2021 using phone number 800-995-2566.

38. Based on an investigation conducted by Plaintiff's attorneys, 800-995-2566 is associated with the customer resolution department of Allstate.

39. Plaintiff spoke with an agent and said that her phone number is on the do not call list.

40. The agent confirmed that the calls would stop.

41. Despite this clear opt-out request, Plaintiff received a pre-recorded call to her cell phone on behalf of Allstate on January 18, 2021 using phone number 660-696-6893.

42. The call began with another pre-recorded agent that asked Plaintiff some questions and then transferred her to an Allstate agent.

43. When the Allstate agent came on the line, she specifically said, "Thanks for calling Allstate."

44. In order to confirm that Allstate is truly behind these calls, Plaintiff asked the agent for a callback number.

45. The agent said that Plaintiff could call 1-800-Allstate.

46. On January 23, 2021, Plaintiff received yet another unsolicited pre-recorded call to her cell phone on behalf of Allstate, this time using phone number 660-324-8469.

47. Plaintiff interacted with yet another pre-recorded agent and was soon transferred to Allstate whereupon she heard an automated greeting, "Thanks for calling Allstate where you're in good hands."

48. A live Allstate agent then came on the line who said, "Good afternoon, thank you for calling the Allstate Life Advice Center.[9] This is Shay on a recorded line, how can I help you?

49. Plaintiff asked Shay where her office is located and she answered that she is in Irving, Texas.[10]

50. Shay then asked Plaintiff if she was interested in getting insurance.

51. Plaintiff told Shay that she is not interested and said she had asked several times before for the calls to stop.

52. Shay told Plaintiff that she would have an email sent to her manager containing Plaintiff's information so the calls would be stopped.

53. On January 28, 2021 at 3:54 PM, Plaintiff received yet another pre-recorded call from a pre-recorded agent to her cell phone on behalf of Allstate selling automotive insurance from phone number 660-570-9454.

54. The pre-recorded agent used the name Justin from Consumer Counsel.

55. Plaintiff played along with the recording and was transferred to an automated greeting identifying the company as Allstate.

56. Plaintiff then had to answer some pre-qualifying questions with Allstate's automated system so she could get passed on to a live agent.

57. An employee came on the line identifying himself as Jesse with Allstate.

58. Plaintiff never provided her cell phone number to Allstate or any company that may have called Plaintiff on behalf of Allstate.

59. The unauthorized prerecorded solicitation telephone calls that Plaintiff Woods received from Allstate, as alleged herein, have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her cell phone, in

---

[9] Allstate Life Advise Center supports customers facing life quotes from Allstate, ensuring the customer has the right coverage to meet their needs, closing the sale, and binding of the application. https://www.wayup.com/i-Financial-Services-j-Allstate-410665906802334/

[10] Allstate runs a program called "Life Advise Center" that has a location in Irving, Texas and is responsible for outbound and inbound sales calls. https://www.wayup.com/i-Financial-Services-j-Allstate-410665906802334/ and https://lensa.com/life-advice-center-manager-allstate-life-and-retirement-jobs/irving/jd/ccec5d9b7fa5f847b876c88624b62765

addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

60. The call also wasted Plaintiff's time, as Plaintiff interacted with a few different pre-recorded agents in order to determine who was calling her and to try and get the calls stopped.

61. Seeking redress for these injuries, Plaintiff Woods, on behalf of herself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited prerecorded and other telemarketing calls to cellular telephones.

## CLASS ALLEGATIONS

62. Plaintiff Woods brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called on their cellular telephone number (2) using a pre-recorded voice message, (3) for a the same purpose that Plaintiff was called.

> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called more than one time (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff.

63. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Woods anticipates the need to amend the Class definitions following appropriate discovery.

64. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

65. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Woods and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether an agent working on behalf of Defendant placed pre-recorded voice message calls to Plaintiff Woods and members of the Pre-recorded Class;

(b) whether Defendant's calls to Plaintiff and other consumers were made for telemarketing purposes;

(c) whether Defendant's calls to Plaintiff and other consumers were made without the requisite level of consent;

(d) whether Defendant's conduct constitutes a violation of the TCPA;

(e) whether Defendant, or an agent working on behalf of Defendant continued to place pre-recorded voice message calls to Plaintiff Woods and members of the Internal Do Not Call Class after being instructed to stop calling; and

(e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

66. **Adequate Representation**: Plaintiff Woods will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Woods has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff Woods and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Woods nor her counsel have any interest adverse to the Classes.

67. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards

of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Woods. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Woods and the Pre-recorded No Consent Class)**

68. Plaintiff Woods repeats and realleges paragraphs 1 through 67 of this Complaint and incorporates them by reference.

69. Defendant and/or its agents transmitted unwanted solicitation telephone calls to Plaintiff Woods and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

70. These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff Woods and the other members of the Pre-recorded No Consent Class.

71. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Woods and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Internal Do Not Registry Class)**

72. Plaintiff Woods repeats and realleges paragraphs 1 through 67 of this Complaint and incorporates them by reference.

73. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

74. Defendant or their agents made marketing calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

75. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

76. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Woods individually and on behalf of the Classes, prays for the following relief:

77. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Woods as the representative of the Classes; and appointing her attorneys as Class Counsel;

78. An award of actual and/or statutory damages and costs;

79. An order declaring that Defendant's actions, as set out above, violate the TCPA;

80. An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

81. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Woods requests a jury trial.

Respectfully Submitted,

**ALTHEIA WOODS**, individually and on behalf of those similarly situated individuals,

DATED this 28th day of April, 2021.

By: /s/ Juneitha Shambee
Juneitha Shambee Esq.
Shambee Law Office, Ltd
juneitha@shambeelaw.com
701 Main St., 201A
Evanston, IL 60202
Telephone: (773) 741-3602
Atty. No.: 6308145

Stefan Coleman (FL Bar no. 30188)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

14